IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TOM PROCTOR § § § | |
| v. § | NO. 4:17-CV-00169-ALM-BD |
| § | |
| NEXT HEALTH LLC, *et al.* § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Relator Tom Proctor filed this *qui tam* suit on behalf of the United States of America against defendants Next Health LLC, Semyon Narosov, and Andrew Hillman for violations of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). Dkt. 1. The United States declined to intervene. Dkt. 27. Proctor moved for summary judgment. Dkt. 253; *see* Dkts. 254 (Hillman's response), 257 (Narosov's response), 256, 258 (replies). The court will recommend that his motion be denied.

## BACKGROUND

### I. Factual Background

Proctor is a former pharmacist-compliance officer for Next Health. Dkt. 1 at 7. When he filed this suit, Next Health owned a chain of more than 100 drugstores and pharmacies operating in Texas and four other States. Dkt. 1 at 6. Semyon Narosov and Andrew Hillman were owners and directors of Next Health.

Proctor alleges that Next Health carried out an elaborate scheme to defraud Medicare, Medicaid, and other federal health programs out of billions of dollars—and that Narosov and Hillman were key players in that fraud. The scheme involved paying kickbacks to physicians who prescribed medications and ordered diagnostic tests based not on patient needs but rather on how much the federal programs would pay Next Health to provide the medications and tests. According

to Proctor, Next Health kept patients in the dark by filling prescriptions with medications that had not been tested or approved by the United States Food and Drug Administration ("FDA") and by filing claims with federal programs falsely stating that it had collected co-pays from patients.

## II. Procedural Background

Proctor filed his original complaint in 2017. Dkt. 1. Prosecution of the suit was delayed while the United States considered whether to intervene. After the United States notified the court that it would not intervene, Dkt. 27, Proctor filed a status report indicating his intent to pursue the suit. Dkt. 30 (sealed). The operative complaint is the amended complaint, Dkt. 171 (sealed), which Proctor filed in January 2022.

Although the United States did not intervene in this civil action, it had previously pursued criminal charges against Narosov, Hillman, and 19 other Next Health employees. *United States v. Beauchamp*, No. 3:16-cr-00516-JJZ (N.D. Tex.). Narosov and Hillman eventually pleaded guilty to some of those charges in 2018.

In October 2022, Next Health's attorneys moved to withdraw from the civil action because Next Health's last remaining employee had resigned. Dkt. 195. Without any employee to direct their representation of the organization, the attorneys could no longer effectively represent it. Dkt. 195 at 2–3. The court permitted the attorneys to withdraw, leaving Next Health unrepresented. Dkt. 216. Without counsel, and unable to proceed *pro se*, *see Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–03 (1993), Next Health did not respond to Proctor's amended complaint. In July 2023, Proctor moved for summary judgment against Next Health, arguing that the allegations in his amended complaint should be deemed admitted because Next Health did not answer. Dkt. 233. The court construed the motion as one for default judgment and declined to rule on Next Health's liability until it could rule on the merits as to all other parties. Dkt. 251.

In April 2024, Proctor filed the motion at issue here, Dkt. 253, which seeks summary judgment against all three defendants. The motion again asks the court to deem all of the amended

2

complaint's allegations against Next Health as admitted because Next Health did not answer the amended complaint. The motion relies on three types of evidence: Next Health's presumed admissions-by-default; the factual stipulations attached to Narosov's and Hillman's plea agreements from the criminal case; and the court orders accepting those agreements.

Still without counsel, Next Health did not respond to Proctor's motion. Hillman responded, faulting the motion for its failure to attach evidence and its reliance on the deemed admissions against Next Health. Dkt. 254. Now *pro se*, Narosov filed a response fully incorporating Hillman's arguments. Dkt. 257. Proctor filed replies to both responses. Dkts. 256, 258.

## LAW

### I. Summary Judgment

A party seeking summary judgment bears the initial burden of demonstrating, by reference to record evidence, if necessary, that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a), (c). A fact is material if, under the governing substantive law, it could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the movant would bear the burden of proof at trial, it must rely on evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense" it seeks to prove. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Once a movant carries its initial burden, the nonmovant may avoid summary judgment by demonstrating the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

To rule on the motion, the court need consider only the record materials cited by the parties, but it may consider the entire record. Fed. R. Civ. P. 56(c)(3). The court must resolve all reasonable doubts in the nonmovant's favor. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. Unit B 1981).

## II. The False Claims Act

The False Claims Act, 31 U.S.C. § 3729 *et seq.*, establishes liability and civil penalties for a laundry list of violations related to making a false or fraudulent "request or demand, whether under a contract or otherwise, for money or property" to "an officer, employee, or agent of the United States" or to a government contractor. *Id.* § 3729(b)(2)(A). The False Claims Act may be enforced through a civil action brought by the Attorney General or through a relator's *qui tam* action on behalf of the United States government. *Id.* § 3730(a)–(b). Depending on the degree of the government's involvement in the suit, a successful relator may be entitled to a portion of the damages awarded as well as expenses and attorneys' fees. *Id.* § 3730(d).

## III. The Anti-Kickback Statute

The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, makes it a felony to knowingly and willfully solicit, receive, offer, or pay any remuneration (including any kickback, bribe, or rebate) to refer "an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made . . . under a Federal health care program" or to "purchase [or] recommend purchasing . . . any good, facility, service, or item for which payment may be made . . . under a Federal health care program." *Id.* § 1320a-7b(b)(1)–(2). Violations of the Anti-Kickback Statute are also actionable through a *qui tam* suit brought under the False Claims Act. *Id.* § 1320a-7b(g); *United States ex rel. Health Choice All., LLC v. Eli Lilly & Co.,* 4 F.4th 255, 262 (5th Cir. 2021).

## DISCUSSION

### I. The court will review the summary-judgment evidence to determine Proctor's motion.

Proctor argues that the court should deem his allegations against Next Health as admitted because Next Health failed to answer his amended complaint. He also argues that the court should consider all of the facts alleged in his summary-judgment motion uncontroverted because the defendants did not specifically dispute them. In response, Hillman and Narosov argue that the court should deny Proctor's summary-judgment allegations because they are not supported by

4

attached evidence. The court will not deem the allegations against Next Health as admitted and will consider relevant evidence in the record to determine whether Proctor has carried his summary-judgment burden.

### A. The court will not grant summary judgment against Next Health based on its deemed admissions.

Proctor argues that Next Health's failure to answer the amended complaint should be deemed an admission of all alleged facts. Dkt. 253 at 5. Federal Rule of Civil Procedure 8(b)(6) provides that an allegation that requires a responsive pleading, other than an allegation relating to the amount of damages, is deemed admitted if not denied. Next Health, a defunct business entity with no employees and no counsel, filed no answer to the amended complaint. It therefore failed to deny any of the allegations against it.

The court has already considered a summary-judgment motion by Proctor relying on Next Health's failure to answer the amended complaint. Dkt. 233. The court treated the motion as one for default judgment, as it relied entirely on the deemed admissions to establish liability. Dkt. 251 at 3–5. The court noted that Proctor has not successfully obtained a default judgment through the process set out in Rule 55. *Id.* at 6. But more importantly, the court held that it would not rule on Proctor's claims against Next Health until it could also rule on the claims against Hillman and Narosov. *Id.* at 7.

Proctor's new motion, Dkt. 253, repeats the same arguments about Next Health's liability and relies on the same evidence—the allegations in his amended complaint, Dkt. 171 (sealed), which, he argues, have been admitted by Next Health. The court declined to rule against Next Health on those facts once, and it will do so again. Entry of a default judgment against Next Health impermissibly risks inconsistent judgments among defendants who may be jointly and severally liable—a result that would occur here if the court entered a default judgment against Next Health and later ruled in favor of one or both of the other defendants. *See Escalante v. Lidge*, 34 F.4th 486, 495 (5th Cir. 2022) ("Inconsistent default judgments, like inconsistent judgments more generally, are strongly disfavored."); *see also Blackhawk Paving, Inc. v. CPCM, LLC*, No. 4:20-CV-00048-

5

SDJ-CAN, 2021 WL 1521985, at *8 (E.D. Tex. Feb. 26, 2021), *report and recommendation adopted in part*, No. 4:20-CV-48-SDJ, 2021 WL 1152836 (E.D. Tex. Mar. 26, 2021) (declining to enter default judgment against one defendant when claims for joint and several liability were pending against another). That is reason enough to deny Proctor's motion for summary judgment as to Next Health.

### B. The defendants' failure to controvert the factual allegations in Proctor's motion does not entitle him to summary judgment.

In his reply, Proctor urges the court to grant summary judgment against all defendants because none of them specifically controverted the allegations raised in his motion. He relies on this court's local rule CV-56(c), which provides that, "[i]n resolving [a] motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the responsive brief filed in opposition to the motion, as supported by proper summary judgment evidence." The same rule also states that "[t]he Court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact." Loc. R. CV-56(c).

But even when the nonmovant fails to controvert allegations in a summary-judgment motion, the movant still must carry his burden to establish, by competent evidence in the record, that he is entitled to judgment as a matter of law. That is because "a party need not respond to a motion for summary judgment unless the moving party discharges its initial burden." *John v. State of La. (Bd. of Trs. for State Colls. and Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985). To conclude otherwise would relieve Proctor of his summary-judgment burden and allow an impermissible "automatic" summary judgment. *Cf. id.* (holding that summary judgment cannot be supported solely on the ground that the nonmovant failed to respond to the motion). And as explained below, Proctor has not discharged that burden. *See infra* Parts II–III.

6

### C. The court may consider evidence not attached to the motion.

In a response that Narosov adopted, Hillman argues that Proctor's motion must be denied because no evidence was attached to it. Hillman relies on Local Rule CV-56(a) and Rule 56 as requiring the attachment of exhibits to a summary-judgment motion.

As Proctor points out in reply, the language of the local rule is not mandatory: "summary judgment evidence *should* be attached to the motion." Loc. R. CV-56(a) (emphasis added). Nor could it properly be. Federal Rule of Civil Procedure 56 allows the court to consider any "materials in the record," even when they have not been cited in, much less attached to, a motion for summary judgment. *See also* Fed. R. Civ. P. 56(f) (allowing the court to grant summary judgment *sua sponte*).

In any event, Proctor's motion is not without evidence. It identifies evidence in the record by citing docket and page numbers. *See, e.g.*, Dkt. 253 at 7 (citing Dkt. 174-1 at 2 (sealed) (evidence that Hillman pleaded guilty to money laundering)). The court will not ignore record evidence just because it is not attached to the motion; doing so would subvert the efficiency that the local rules aim to promote. *See In re Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984) (noting that "[c]ourts have broad discretion in interpreting and applying their own local rules adopted to promote efficiency").

## II. There is a genuine issue of material fact regarding whether Narosov and Hillman violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

### A. Narosov

Proctor points out that Narosov admitted, in the factual stipulations attached to his plea agreement for his money-laundering conviction, that he "submitted, or caused to be submitted, fraudulent claims to private and government health care benefit programs for prescriptions prescribed by physicians who were monetarily induced by illegal kickbacks in the form of 'dividends' from investments in pharmacies or payments through marketers." Dkt. 253 at 17 (quoting Dkt. 174-7 at 3 (sealed)). In other words, Narosov admitted to submitting false claims, and he admitted that those false claims were for prescriptions made by doctors who had received kickbacks. *Id.*

7

But Narosov has not admitted that he personally solicited or paid the kickbacks. He does not admit to "solicit[ing] or receiv[ing] any remuneration" or "offer[ing] or pay[ing] any remuneration" for any of the reasons proscribed by § 1320a-7b(b). He also does not admit that he had the required "knowing[] or willful[]" mental state. 42 U.S.C. § 1320a-7b(1). For those reasons, his admission that he submitted false claims does not, by itself, prove a violation of the Anti-Kickback Statute.

Proctor also points out that Narosov was "adjudged guilty of 18 U.S.C. § 371, namely, Conspiracy to Pay and Receive Healthcare Bribes and Kickbacks." Dkt. 253 at 17 (quoting Dkt. 174-5 at 1 (sealed)). But the bare recitation that Narosov is guilty of conspiracy does not satisfy the elements of the Anti-Kickback Statute. A violation of the conspiracy statute, 18 U.S.C. § 371, requires proof of "(1) an agreement between two or more persons to pursue [the] unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United States v. Marchetti*, 96 F.4th 818, 824 (5th Cir. 2024). The third element requires that "one or more of the members of the conspiracy" commit an overt act, not that the defendant himself commit an overt act. A violation of the Anti-Kickback Statute, however, requires an overt act: soliciting, receiving, offering, or paying remuneration. Narosov could therefore be guilty of "Conspiracy to Pay and Receive Healthcare Bribes and Kickbacks" under § 371 without having personally committed any overt act, much less an act prohibited by the Anti-Kickback Statute. Without showing that Narosov himself committed an overt act in violation of the Anti-Kickback Statute, Proctor cannot meet his summary-judgment burden to show that there is no genuine dispute as to any essential element of his § 1320a-7b(b) claim.

**B. Hillman**

Proctor does not argue Hillman's violation of § 1320a-7b(b) separately from Narosov's. Because both signed stipulations containing the same statements about their money-laundering

8

activities and both pleaded guilty to the same conspiracy charges, the same reasoning that applies to Narosov applies to Hillman.

### III. There is a genuine issue of material fact regarding whether the defendants violated the False Claims Act, 31 U.S.C. § 3729(a)(1).

Proctor alleges that Hillman and Narosov violated the False Claims Act by conspiring to commit a violation, § 3729(a)(1)(C), by knowingly presenting false claims, § 3729(a)(1)(A), and by knowingly making or using "a false record or statement material to an obligation to pay or transmit money or property to the Government" or "knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Proctor does not sufficiently connect the established facts to any of those alleged violations.

#### A. Conspiracy to commit a violation, 31 U.S.C. § 3729(a)(1)(C)

Proctor argues that Hillman and Narosov conspired to violate the False Claims Act and thus should be held jointly and severally liable. *See United States ex rel. Drummond v. BestCare Lab'y Servs., L.L.C.*, 950 F.3d 277, 284–85 (5th Cir. 2020). The False Claims Act makes it a violation to "conspire[] to commit a violation" of six other categories of prohibited conduct. 31 U.S.C. § 3729(a)(1)(C). The statute does not define "conspire," *see id.* § 3729(b) (defining several other terms used in the statute), and Proctor proposes no definition. Instead, he again quotes from Narosov's stipulations attached to his guilty plea and concludes that "Narosov has admitted" to conspiring to violate the Act. Dkt. 253 at 18.

Narosov's stipulations in the criminal case include many details that could possibly demonstrate a conspiracy to violate the False Claims Act. Narosov stipulated that he "and others known and unknown . . . knowingly and willfully executed a scheme or artifice to defraud health care benefit programs" that included his submission of fraudulent claims to government health care benefit programs 1) for prescriptions prescribed by physicians who were induced by illegal kickbacks; 2) for prescriptions that were medically unnecessary; 3) for prescriptions filled by Next

9

Health with misbranded and/or non-FDA approved drugs; and 4) for prescriptions with improperly substituted drugs. Dkt. 253 at 19 (quoting Dkt. 174-7 at 2–3 (sealed)). He also admitted to providing documentation to government health care benefit programs falsely claiming that Next Health had collected co-pays from patients. *Id.*

Although those stipulations evince wrongdoing, there is still a genuine dispute of material fact as to whether Narosov conspired to commit a violation. Proctor does not suggest what elements must be present to demonstrate a conspiracy, let alone point out what parts of Narosov's admissions meet those criteria. Nor does he indicate which of the statute's six categories of violations Narosov conspired to commit. *See* 31 U.S.C. § 3729(a)(1)(A)–(B), (D)–(G). In short, Proctor's motion fails to draw a connection between Narosov's admissions and a conspiracy to violate any provision of the False Claims Act.

The motion falls short as to Hillman for the same reason. Proctor relies on Hillman's unadorned admission that he engaged in money laundering and his guilty plea to the criminal conspiracy charge to show that he conspired to violate the False Claims Act. But again, Proctor's motion does not connect the dots to show how those admissions equate to a conspiracy to violate the False Claims Act under any of the six relevant subparagraphs. *See id.* None of those subparagraphs makes money laundering—even the laundering of money obtained through a violation of 18 U.S.C. § 1347—a violation of the False Claims Act.

## B. Knowingly presenting false claims, 31 U.S.C. § 3729(a)(1)(A)

Proctor relies entirely on the alleged violation of the Anti-Kickback statute to demonstrate that Narosov and Hillman also violated 31 U.S.C. § 3729(a)(1)(A) by presenting claims obtained through illegal kickbacks. Because Proctor is not entitled to judgment as a matter of law on the violations of the Anti-Kickback Statute, *see supra* Part II, he similarly is not entitled to rely on that alleged violation to prove this one.

### C. Receiving government money that the defendants were not entitled to receive, 31 U.S.C. § 3729(a)(1)(G)

Proctor relies on his demonstration that Next Health violated § 3729(a)(1)(G) to show that Narosov and Hillman, who were owners of Next Health, also violated that subsection. Because the court declines to rule on Next Health's liability, *see supra* Part I.A, Proctor cannot succeed here by relying on Next Health's alleged violation.

Proctor also asserts that Narosov and Hillman, as owners of Next Health, received and retained the illegal funds received by Next Health. But he does not explain how receiving and retaining money to which they were not entitled amounts to a violation of 31 U.S.C. § 3729(a)(1)(G), which prohibits "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government." Nor does he explain how the owner of a business, in this case a limited-liability company, may be held liable for the business's violation of § 3729(a)(1)(G).

## RECOMMENDATION

It is **RECOMMENDED** that the motion for summary judgment, Dkt. 253, be **DENIED**.

\* \* \*

Within 14 days after service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made. *Id.* § 636(b)(1). Failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir.

1996) (en banc), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

So **ORDERED** and **SIGNED** this 14th day of November, 2024.

_____
Bill Davis
United States Magistrate Judge